MID–MOUNTAIN FOODS,
INC., Petitioner,

v.

NATIONAL LABOR RELATIONS
BOARD, Respondent.

No. 00–1422.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 9, 2001.

Decided Nov. 6, 2001.

Ronald I. Tisch argued the cause for petitioner. With him on the briefs were Peter A. Susser and Mark M. Lawson.

Anna L. Francis, Attorney, National Labor Relations Board, argued the cause for respondent. With her on the brief were Arthur F. Rosenfeld, General Counsel,

John H. Ferguson, Associate General Counsel, Aileen A. Armstrong, Deputy Associate General Counsel, and Fred L. Cornnell, Jr., Supervisory Attorney.

Before: SENTELLE, RANDOLPH, and GARLAND, Circuit Judges.

Opinion for the Court filed PER CURIAM.

PER CURIAM:

Mid–Mountain Foods, Inc., a Virginia wholesale grocer, petitions for review of an order of the National Labor Relations Board. The Board cross-petitions for enforcement.

On August 1, 1996, the Board supervised an election to determine whether Mid–Mountain's warehouse employees desired to be represented by the United Food and Commercial Workers International Union, Local 400. The union lost. After reviewing the actions and statements of Mid–Mountain's management, the Board found that the company had committed several unfair labor practices. The Board therefore ordered another election and ordered the company to cease and desist from the unfair labor practices.

■ Mid–Mountain asks us to set aside the portion of the Board's order requiring a new election. We cannot consider this issue now. We have repeatedly held that the Board's decision to hold another election is not a "final order." Therefore, judicial review is not yet available under the National Labor Relations Act. *See Adtranz ABB Daimler–Benz Transp. v. NLRB*, 253 F.3d 19, 24–25 (D.C.Cir.2001); *Gold Coast Rest. v. NLRB*, 995 F.2d 257, 267 (D.C.Cir.1993) (citing *American Fed'n of Labor v. NLRB*, 308 U.S. 401, 409, 60 S.Ct. 300, 84 L.Ed. 347 (1940)); *see also Hartz Mountain Corp. v. Dotson*, 727 F.2d 1308, 1310–12 (D.C.Cir.1984); *International Union of Elec., Radio & Mach. Work-*

*ers, Local 806 v. NLRB*, 434 F.2d 473, 482 (D.C.Cir.1970).

■ Mid–Mountain also claims that the Board's findings of unfair labor practices were unsupported. The company raises numerous evidentiary objections. There is no need to go into these in detail. Substantial evidence sustains the Board's decision that Mid–Mountain Foods committed unfair labor practices when its supervisors interrogated employees about their views on unionization, when company representatives threatened harsher enforcement of company work rules (if the union won the election), when a supervisor suggested the company would fire union supporters, when the company sanctioned an employee for missing work to testify before the Board's Administrative Law Judge, and when the employer disseminated a pamphlet threatening to close the facility if the union won. *See, e.g., Perdue Farms v. NLRB*, 144 F.3d 830, 834–35 (D.C.Cir. 1998).

■ We also sustain the Board's conclusion that Mid–Mountain violated § 8(a)(1), 29 U.S.C. § 158(a)(1), when it removed prounion material from the company's outdoor break area, while permitting anti-union literature to remain. Once an employer allows employee speech in a specific area of company property, the employer may not selectively censor the employees' union-related speech. *See Container Corp. of Am.*, 244 N.L.R.B. 318, 318 n. 2 (1979) (holding that once an employer permits use of its bulletin boards for employee postings, it may not discriminate against pro-union messages). *Cf. Helton v. NLRB*, 656 F.2d 883 (D.C.Cir.1981) (finding incumbent union committed an unfair labor practice when it removed employee speech critical of union from bulletin boards where other employee speech was permitted). When the employee break area is filled with literature of all

sorts, an employer's selective removal of pro-union pamphlets conveys the unmistakable message of hostility toward unionization.

In regard to another incident, the Administrative Law Judge concluded that Mid–Mountain did not selectively remove union literature from tables in a break area in mid-July 1996. *See Mid–Mountain Foods,* 332 N.L.R.B. No. 19, 2000 WL 1390484, at *30 (Sept. 21, 2000). The Board overturned this factual conclusion, crediting—so counsel for the Board explained at oral argument—the testimony of a Mid–Mountain employee that a supervisor had done just that. The company did not contest this particular finding of the Board, and we therefore will uphold it.

It is unnecessary for us to consider the Board's alternative ground that the National Labor Relations Act required the company to allow pro-union literature to remain in break areas indefinitely unless the papers were "strewn about in an unsightly or hazardous manner," even if the company was throwing away *all* literature and trash in the area. *Mid–Mountain Foods,* 2000 WL 1390484, at *2. The Board did not explain why an employee's "right to distribute" literature, *see NLRB v. Magnavox Co.,* 415 U.S. 322, 325–26, 94 S.Ct. 1099, 39 L.Ed.2d 358 (1974); *Republic Aviation v. NLRB,* 324 U.S. 793, 803 n. 10, 65 S.Ct. 982, 89 L.Ed. 1372 (1945), includes the right to use a company's break room as an extended distribution center, or why a company's practice of regularly cleaning out such areas, without discriminating between the types of material employees leave behind, should give rise to a violation of the Act. *Compare Mid–Mountain Foods,* 2000 WL 1390484, at *2, *with Container Corp. of Am.,* 244 N.L.R.B. 318, 318 n. 2 (1979); *The Heath Co.,* 196 N.L.R.B. 134, 134–35 (1972); *Union Carbide Corp.,* 259 N.L.R.B. 974, 980 (1981); *Mid–Mountain Foods,* 2000 WL 1390484, at *2 to *4. We leave to another day the issues the Board's alternative holding presents.

The petition for judicial review is denied. The Board's cross-petition for enforcement is granted.